UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60934-SINGHAL/VALLE

GARY V. KODA,

    Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

### REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 22) (together, "the Motions"). U.S. District Judge Raag Singhal has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 4).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 23), Plaintiff's Reply (ECF No. 24), and the hearing on the Motions,[2] and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary

---

[1] Kilolo Kijakazi has been appointed Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

[2] The Court held a hearing on the Motions on August 23, 2022. (ECF No. 30). The transcript of the proceedings, which the undersigned has requested be filed on the docket, is incorporated by reference (hereinafter "Hr'g Tr.").

Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

### I.   PROCEDURAL HISTORY

In May and July 2019, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability beginning on September 28, 2018. (R. 22).[3] Plaintiff's applications were denied initially and again upon reconsideration. (R. 86, 88, 110, 112). Thereafter, Plaintiff requested a hearing, which was held on June 10, 2020, before ALJ Patrick Cutter. (R. 42-65). Plaintiff appeared with counsel and testified at the hearing. (R. 46-59). A Vocational Expert ("VE") also testified. (R. 59-63). On June 30, 2020, the ALJ issued a decision denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act. (R. 23, 37).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-5); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

### II.   STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson*

---

[3] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer. *See* (ECF Nos. 14, 15).

*v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB) and § 1382 (standard for SSI). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4) (evaluation process for DIB); 416.920(a)(4) (evaluation for SSI). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R.

4

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239.  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform.  *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.  THE ALJ'S DECISION

On June 30, 2020, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the [Act] from September 28, 2018, through the date of this decision."  (R. 23, 37).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 28, 2018, the alleged onset date.  (R. 24).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: depression, anxiety, and posttraumatic stress disorder ("PTSD").  (R. 24-25).  On the other hand, the ALJ found that Plaintiff's other medically determinable impairments (migraine headaches, sleep apnea, shoulder tendonitis, wrist pain, and nutritional issues) were not severe.  (R. 25).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings.  (R. 26).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations:  (i) maintain concentration,

persistence, and pace for two-hour segments sufficient to perform routine tasks associated with unskilled work with an SVP of 1 or 2; (ii) frequently work in coordination with or proximity to others without being distracted; (iii) frequently interact with co-workers; and (iv) occasionally respond to changes in work situations in a routine work setting. (R. 32).

Based on this RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work as an aviation electronics intelligence operator or as a naval control shipping officer. (R.35-36). Thus, the ALJ proceeded to Step 5 of the sequential analysis. (R. 36-37). At Step 5, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as box bender, mold filler, and hand packagers, all medium unskilled work with an SVP of 1 or 2. (R. 37). The ALJ ultimately concluded that Plaintiff is not disabled. *Id*.

### IV.   DISCUSSION

On appeal, Plaintiff argues that the ALJ committed several errors that require reversal. First, Plaintiff argues that the ALJ failed to adequately consider the medical evidence of Plaintiff's physical impairments underlying the Department of Veteran's Affairs (the "VA") 100% disability rating for Plaintiff. (ECF No. 19 at 15-17). Next, Plaintiff challenges the ALJ's evaluation of the persuasiveness of the medical opinion of Dr. Stephanie Eppinger, who treated Plaintiff for depression and PTSD. *Id.* at 17-20. As discussed below, the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence. Accordingly, the ALJ's Decision should be affirmed.

**A. The ALJ Properly Considered the Evidence Underlying the VA's Disability Determination**

   *1.  Applicable Law*

The Social Security Administration recently amended its regulations regarding how an ALJ should evaluate another government agency's (like the VA) disability finding. Under the new

regulations applicable to claims filed after March 2017, the ALJ is not required to analyze the other government agency's disability determination, but must "consider all of the supporting evidence underlying the other governmental agency's decision" contained in the administrative record before the ALJ. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 (11th Cir. 2020) (citation and quotations omitted); *Contreras v. Comm'r of Soc. Sec.,* No. 18-CV-739-FtM-MRM, 2020 WL 1316784, at *13 (M.D. Fla. Mar. 20, 2020); *see also* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1), 416.904, 416.920b(c)(1). Both parties agree that the amended regulations govern Plaintiff's claims.

### 2. The ALJ Considered the Evidence Underlying the VA's Disability Determination

Plaintiff argues that the ALJ failed to consider the medical evidence of Plaintiff's physical impairments, including migraine headaches and various orthopedic conditions (*i.e.*, cervical spine, hip, and shoulder issues) underlying the VA's determination. (ECF No. 19 at 16-17). According to Plaintiff, the "ALJ ignored all this evidence considered by the VA in its rating decision," in derogation of his duty to "discuss and analyze the underlying medical records that the VA used in deciding the case." *Id.* at 16, 17.

Having reviewed the ALJ's Decision and the medical record, the undersigned finds Plaintiff's arguments wholly unpersuasive. Rather, the ALJ's Decision reflects the ALJ's fulsome review of the medical record on which the VA relied, including physical and mental health records dating as far back as 2016. For example, at Step 2 of the evaluation process, the ALJ discussed Plaintiff's migraine headaches and resulting conservative treatment, consisting of over-the-counter ibuprofen without further medical treatment from a physician.[4] (R. 25) (citing to Exh. 1F at 100

---

[4] Plaintiff argues that the ALJ erred later in the Decision, *see* (R. 33), when he stated that there was no treatment for Plaintiff's headaches. (ECF No. 19 at 16). But, according to Plaintiff's hearing testimony, he has not "had any meds for [migraines] since [he] got out [of the Navy] in September

7

(R. 366)). The ALJ also discussed Plaintiff's sleep apnea, which the VA found did not affect Plaintiff's ability to work, *see* (Exh. 1F at 79 (R. 345)), and which improved with use of a CPAP machine that "was helping [Plaintiff] sleep." (R. 25) (citing to Exh. 2F at 269 (R. 715)). Regarding Plaintiff's shoulders, the ALJ noted that February 2020 MRIs of Plaintiff's shoulders reflected mild-to-moderate tendinosis and VA doctors had concluded that this condition did not "impact [Plaintiff's] ability to perform any type of occupational task," such as standing, walking, lifting, and sitting.[5] (R. 25) (citing to Exh. 1F at 100 (R. 366) and Exh. 4F at 130-32 (R. 900-02)). The ALJ even considered Plaintiff's complaints of and treatment for wrist pain, including unremarkable X-ray results and occupational therapy notes without diagnosis of a wrist disorder. (R. 25) (citing to Exh. 4F at 95 (R. 865)). Lastly, the ALJ considered Plaintiff's testimony at the administrative hearing, where "[Plaintiff] testified that he was physically healthy and his physical problems do not bother him 'too much.'"[6] (R.25); *see also* (R. 50-51) (Plaintiff testified that his physical problems are "minor").

Against this background, the undersigned finds that the ALJ properly considered the evidence underlying Plaintiff's VA disability rating, in accordance with the applicable regulations.

---

of '18." (R. 50). Accordingly, the undersigned finds no error in the ALJ's characterization of the migraine treatment.

[5] At oral argument, Plaintiff conceded that Plaintiff's shoulder tendinosis did not result in any functional loss. *See generally*, Hr'g Tr.

[6] Relatedly, the undersigned notes, and Plaintiff acknowledged during oral argument on the Motions, that Plaintiff did not allege physical impairments in his application for benefits and Adult Function Report, or during his testimony before the ALJ. *See generally* Hr'g Tr. Under similar circumstances, the Eleventh Circuit has found that an ALJ has no duty to consider diagnoses that a claimant has not alleged in his application or during the administrative hearing. *See Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (finding that ALJ had no duty to consider an impairment that claimant had not listed either in the application for benefits or through testimony); *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (same). In any event, the ALJ here did consider Plaintiff's physical impairments and found them to be non-severe. (R. 25).

*See Davenport v. Comm'r of Soc. Sec.*, No. 20-CV-720-PGB-DCI, 2021 WL 7450498, at *3 (M.D. Fla. Aug. 26, 2021) (finding that ALJ properly considered evidence underlying VA's rating even though the decision did not acknowledge the VA's determination). Accordingly, the undersigned finds that the ALJ applied the proper legal standards in evaluating the VA's disability rating and the ALJ's Decision is supported by substantial evidence.

### B. The ALJ Properly Evaluated Dr. Eppinger's Opinion

#### *1. Applicable Law*

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. §§ 404.1513(a), 416.913(a). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Relevant here, for medical opinions on claims filed after March 2017, the treating source rule has been eliminated.[7] *Matos v. Comm'r of Soc. Sec.*, No. 21-CV-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."); *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL

---

[7] For claims filed prior to March 27, 2017, the treating source rule generally required ALJs to give "controlling weight" or "greater weight" to a treating source's opinion absent "good cause." 20 C.F.R. §§ 404.1527(c), 416.927(c). The parties agree that the new regulations govern Plaintiff's disability claim.

9

9048787, at *4 (S.D. Fla. Oct. 23, 2020). Under the revised regulations, while a medical source's treatment relationship with a claimant remains a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is no longer entitled to controlling weight or deferential treatment. *Ramos*, 2021 WL 5746358, at *9; *Bonilla*, 2020 WL 9048787, at *4. Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion is: (i) supported by objective medical evidence and the source's explanation of his opinion; and (ii) consistent with other evidence in the medical record. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). These factors, referred to as "supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[8] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Matos*, 2022 WL 97144, at *4; *Bonilla,* 2020 WL 9048787, at *4. Additional factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5). In addition, although the ALJ must articulate how he considered medical opinions from all medical sources, the ALJ need only explain his consideration of the supportability and consistency factors. *Bonilla,* 2020 WL 9048787, at *5; 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

### 2. *The ALJ Did Not Err in Evaluating Dr. Eppinger's Opinion*

Dr. Eppinger, a psychologist, treated Plaintiff between April and November 2019 at the VA clinic. (R. 34, 769). On November 29, 2019, the doctor completed a Medical Evaluation Report, in which she found that Plaintiff had severe mental limitations. *See generally*, (R. 769-

---

[8] "Supportability" refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source to support his or her" opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinions presented. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

10

70).  More specifically, Dr. Eppinger opined that Plaintiff had an extreme limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 770).  Dr. Eppinger also found that Plaintiff had marked limitations in the ability to: (i) maintain attention and concentration for extended periods; (ii) sustain an ordinary routine without special supervision; (iii) make simple work-related decisions; (iv) respond appropriately to customary stresses in a work setting; and (v) set realistic goals or make plans independently of others.  (R. 769-70).  Dr. Eppinger further opined that Plaintiff had moderate limitations in the ability to carry out detailed instructions or respond appropriately to criticism from supervisors.  *Id.*  In all other categories, Dr. Eppinger found that Plaintiff had either mild or no limitations.  *Id.*

After reviewing the medical evidence, the ALJ concluded that the opinion of Dr. Eppinger was not persuasive because it "is not supported by any summary of the claimant's impairments, signs, symptoms, or specific references to treatment or response to treatment [and] is also inconsistent with the longitudinal clinical signs and findings that were reported in Dr. Eppinger's own treatment notes."  (R. 34).  Relying on *Schink*,[9] Plaintiff argues that the ALJ erred in finding Dr. Eppinger's opinion unpersuasive because he failed to consider the episodic nature of Plaintiff's mental health issues.  (ECF No. 19 at 17-21).  Plaintiff also challenges the ALJ's discussion of the post-2017 regulatory factors for evaluating medical opinions.[10]  *See generally,* Hr'g Tr.  These arguments are addressed below.

---

[9] *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1251 (11th Cir. 2019).

[10] To be clear, in his brief, Plaintiff argued that the ALJ failed to address only the consistency factor in evaluating Dr. Eppinger's opinion.  (ECF No. 24 at 4).  Plaintiff wrote: "While Plaintiff agrees that the ALJ discussed the requisite factor of supportability, the factor of *consistency* was not discussed."  *Id*. at 3 (emphasis added).  On the next page, Plaintiff reiterates that "close perusal of the ALJ's rationale reveals that [the ALJ's] discussion did not address the factor of *consistency* by comparing the opinion of Dr. Eppinger with the other medical evidence."  *Id*. at 4 (emphasis

Plaintiff's arguments are unpersuasive. First, the court in *Schink* applied pre-2017 medical opinion rules, which required the ALJ to assign great weight to a treating source's opinion absent articulated "good cause." *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 865 n.10 (11th Cir. 2019); *Serrano v. Saul*, No. 19-CV-241-AW-HTC, 2020 WL 5550505, at * 8 (N.D. Fla. Aug. 7, 2020). Thus, the critical issue in *Schink* was whether the ALJ had stated sufficient "good cause" to give less than controlling weight to the treating physician's opinion. *See Schink*, 935 F.3d at 1259-60. Moreover, unlike the ALJ's Decision here, discussed more fully below, the ALJ's decision in *Schink* did not identify any inconsistencies between the treatment notes and the challenged medical opinion. *Ross*, 794 F. App'x at 865 n.10. In addition, the ALJ in *Schink* did not find that claimant suffered from a severe mental impairment and "entirely omitted the claimant's mental impairment when assessing his [RFC]." *Id.* Conversely, the ALJ in this case determined that Plaintiff suffered from several severe mental impairments, including depression, anxiety, and PTSD, and accounted for these severe impairments in Plaintiff's RFC.[11] (R. 24-25, 32).

Second, the ALJ's Decision accurately reflects the fluctuating nature of Plaintiff's mental health issues. *See* (R. 27-35). Below are examples of the ALJ's discussion regarding Plaintiff's waxing and waning symptoms:

> [Plaintiff] has actively participated in group and individual therapy, and reported that his symptoms had improved. When his symptoms increased, he stated to his

---

added). At oral argument, however, Plaintiff retracted this statement and also challenged the ALJ's discussion of the supportability factor. Despite Plaintiff's inconsistent arguments, the undersigned will review the ALJ's discussion of both factors in evaluating Dr. Eppinger's opinion.

[11] Based on these severe impairments, the ALJ limited Plaintiff to: (i) maintaining concentration, persistence, and pace for only two-hour segments sufficient to perform routine tasks associated with unskilled work with an SVP of 1 or 2; (ii) frequently working in coordination with or proximity to others without being distracted; (iii) frequently interacting with co-workers; and (iv) occasionally responding to changes in work situations in a routine work setting. (R. 32).

> treating providers that he was able to use the coping mechanisms he had learned in treatment. Exacerbations were short-lived.
>
> * * *
>
> In evaluation notes from February 2018, [Plaintiff] reported that his depressive symptoms worsened after negative counseling he received aboard another ship he was assigned to in 2017. He began crying daily with loss of motivation at that time. He also asserted law mood, anhedonia, difficulty staying asleep, constant fatigue, worthlessness, guilt, poor concentration, and fleeting suicidal ideation without intent.
>
> * * *
>
> In February 2019, [Plaintiff] . . . experienced persistent and exaggerated negative beliefs about himself, others, and the world . . . [and] asserted decreased interest, detachment from others, persistent inability to experience positive emotions.
>
> * * *
>
> Notes from an October 2019 individual therapy session indicate that the claimant was making progress toward his goals. . . and he reported having improved ability to feel emotions with a decrease in numbing.
>
> * * *
>
> In November 2019, [Plaintiff] reported financial stress and significant debt. He rated his symptoms of depression and anxiety as 5/10 . . . [and] stated that his symptoms were improving with medication.
>
> * * *
>
> In [an] August 2019 Function Report, [Plaintiff] indicated that he had difficulty getting along with others, but also stated that he traveled around the local area working on ministry with people. He also drives, shops in stores, handles his finances, and socializes. He regularly attends church, volunteers on a radio show, and attends medical appointments.

(R. 27, 28, 30).

Lastly, the ALJ adequately addressed the supportability and consistency factors, as required by the applicable regulations governing medical opinion evidence. The ALJ wrote:

> The undersigned considered the November 29, 2019 medical opinion of treating psychologist Stephanie Eppinger, Ph.D. (Ex. 3F). The undersigned does not find this opinion persuasive. It is not supported by any summary of the claimant's

13

> impairments, signs, symptoms, or specific references to treatment or response to treatment. It is also inconsistent with the longitudinal clinical signs and findings that were reported in Dr. Eppinger's own treatment notes . . . . However, the treatment notes show largely normal mental status exams on all visits over a prolonged period. Dr. Eppinger reported in the treatment notes that the claimant's symptoms were no worse than moderate. Overall, as previously discussed, the claimant's mood was reported as good, his mental status was normal, and he was able to function doing his daily activities, including writing papers and going to school. Dr. Eppinger also reported that medication provided good relief for [Plaintiff's] mental health symptoms and there were no adverse side effects reported. Additionally, at the time of the completion of that opinion, the claimant reported an exacerbation of symptoms, but it was due to medication noncompliance and was only short -lived (Ex. 2F at 262).

(R. 34).

To be clear, the ALJ reviewed Plaintiff's voluminous medical record, including records predating Plaintiff's alleged onset date and treatment notes from group therapy and nutritional counseling, reflecting Plaintiff's ability to engage in different environments. *See, e.g.*, (Exhs. 1F, 2F, 4F). Thus, reading the ALJ's Decision and the record as a whole, the undersigned finds that the ALJ accurately summarized Plaintiff's health issues and mental status examination results from 2019 through 2020. (R. 27-35).

Plaintiff also references *Tumlin*[12] for the proposition that the ALJ erred by relying on Plaintiff's mostly normal MSEs results in evaluating Dr. Eppinger's opinion. (ECF No. 19 at 21). But *Tumlin* is distinguishable in that the court criticized the "ALJ's repeated emphasis on the normal mental status examinations *without adequate explanation of potentially competing evidence*." *Tumlin,* 2021 WL 1214880, at *11 (emphasis added). Here, as discussed above, the ALJ relied not only on the results of MSEs but also considered competing evidence in the record. This included, for example, the absence of inpatient psychiatric treatment or crisis stabilization

---

[12] *Tumlin v. Comm'r of Soc. Sec.*, No. 19-CV-00457-JLB-NPM, 2021 WL 1214880 (M.D. Fla. Mar. 31, 2021).

service and Plaintiff's ability to earn a Master's degree in Science Management through a 1-year, online program that began in March 2019. (R. 27, 29).

Against this backdrop, the undersigned finds that the ALJ properly evaluated Dr. Eppinger's opinion and adequately explained both the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). In so doing, the ALJ was not required to use any particular language or formulations as long as the ALJ applied the proper legal standards and substantial evidence supports his decision. Such is the case here. *See Gelbart v. Berryhill*, No. 17-CV-61361, 2018 WL 4573145, at *3 (S.D. Fla. Sept. 25, 2018) (concluding that, although regulatory factors were not specifically enumerated and discussed by name, the evaluation was evident in the ALJ's analysis). Moreover, the ALJ was not required to discuss every piece of evidence or articulate "good cause" to discount the medical opinions. Here, the ALJ did what the regulations required him to do: he articulated the supportability and consistency of Dr. Eppinger's medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2); *Matos*, 2022 WL 97144, at *4. Indeed, the issue is not whether some evidence might support Plaintiff's allegations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Nor is it for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel,* 631 F.3d at 1178 (citation omitted). Rather, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053. Furthermore, even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth,* 703 F.2d at 1239. Here, after reviewing the record as a whole, the undersigned finds that substantial evidence supports the ALJ's Decision and that the ALJ applied the proper legal standards.

## V.  RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 19) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 22) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED** for the reasons set forth above.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on August 26, 2022.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of Record